UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 22-243 (MJD/DTS)

UNITED STATES OF AMERICA,

    Plaintiff,

v.

MARCUS TRICE,

  A/K/A FREDERICK LEON FLOYD,

    Defendant.

**GOVERNMENT'S SENTENCING POSITION PLEADING**

COMES NOW the United States of America, by and through its undersigned attorneys, Andrew M. Luger, United States Attorney for the District of Minnesota, and Allen A. Slaughter Jr., Assistant United States Attorney, and submits the following position on sentencing.

Marcus Trice (Defendant) pleaded guilty on January 25, 2024, to Count 2 of the superseding indictment, which charges him with possession with the intent to distribute fentanyl, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. As part of his plea terms the government will dismiss the fentanyl conspiracy alleged at Count 1. Due to the large volume of drugs attributable to the Defendant, the parties stipulated that a base offense level of 34 applied because he is responsible for at least 4 but less than 12 kilograms of fentanyl. Plea Agreement (Agreement) at ¶ 7; Pre-Sentence Report (PSR) at ¶ 4. In his plea terms the Defendant acknowledged sanctions including ranges of at least 97-121 months or up to 121-151 months under the advisory Guidelines, and a statutory mandatory

minimum of 120 months imprisonment unless the Defendant is found to be safety valve eligible. *Id.*

The PSR is generally in agreement with the plea terms. It recommends a base offense level of 34, counsels a three-level reduction for acceptance, and recommends a criminal history category II. The government agrees with the PSR's criminal history scoring and category recommendation. The PSR also indicates the Defendant may qualify for safety valve treatment, but to date he is not so eligible. Should the Defendant qualify, his total offense level would be 29, resulting in a recommended range of 97-121 months imprisonment. PSR ¶¶ 25, 73. The government submits that a term of 121 months imprisonment – an annum for every 10,000 pills he tried to smuggle into this District – is the appropriate prison disposition here.

## Discussion

The Court must determine what constitutes a reasonable sentence as guided by the factors of Title 18, United States Code, Section 3553(a). As a first step, the Court must determine the applicable Sentencing Guidelines. Although the Guidelines are advisory, the Court must "remain cognizant of them throughout the sentencing process." Gall v. United States, 552 U.S. 38, 50 n.6 (2007). Indeed, a court may "'rest [its] decision upon the Commission's own reasoning that the Guidelines sentence is a proper sentence (in terms of § 3553(a) and other congressional mandates) in the typical case' if the court finds that the case before it is typical." United States v. Robinson, 516 F.3d 716, 718 (8th Cir. 2008) (quoting Rita v. United States, 551 U.S. 338, 357 (2007)). In addition to considering the Guidelines, Section 3553(a) requires the Court to analyze a number of factors, including

the nature and circumstances of the offense, the history and circumstances of the defendant, the need for the sentence to reflect the seriousness of the offense, the need for deterrence, the need to protect the public from further crimes of the defendant, and the need to avoid unwarranted disparities. 18 U.S.C. § 3553(a).

## The Nature and Circumstances of the Offense

The government agrees with the PSR's general description of the Defendant's criminal acts as part of his drug distribution activities. *See* PSR ¶¶ 7-1. The Defendant also admitted various facts as part of his plea. After checking his bag on a separate flight departing Seattle bound for the Twin Cities on August 30, 2022, the Defendant traveled here as well and met up with his packed suitcase. He arrived just before midnight and was working with others, including co-conspirators who rented a room for him – albeit fraudulently. He took a taxi to the Bloomington hotel.

The fraud victim reached out to hotel staff shortly after the Defendant went up to his room. Law enforcement was called and Bloomington Police officers investigated. Shortly after the defendant landed from Washington state, the officers encountered him in the hotel lobby and engaged him in conversation. His responses to questions led only to further inquiry, as the Defendant could not spell the name of the person who rented the room (supposedly also his cousin) and he could not remember the name of the person whose funeral he had purportedly flown into the Twin Cities to attend. Meanwhile, the Defendant's phone continued to receive calls and texts. Law enforcement arrested the Defendant for financial transaction card fraud but also suspected controlled substance activity.

During a subsequent search of the Defendant's suitcase law enforcement found eleven separate large Kirkland brand pill bottles which originally contained magnesium citrate, glucosamine, calcium, fish oil or vitamin C. Instead of housing their original contents, the bottles had been resealed and each was filled with counterfeit blue "M30" oxycodone pills containing fentanyl.



In all, law enforcement recovered approximately 100,000 fentanyl-laden pills from the vitamin and supplement bottles. The pills weighed approximately 10,8094 grams. The defendant was taken into custody. The event still remains one of the larger one-time seizure

events in the District. Meanwhile, even in 2022 it was commonly known that even a handful of these pills, sometimes just one, could kill a human being:



Furthermore, a suspected distribution conspirator also continued to call the hotel on numerous occasions, ostensibly to catch up with the Defendant (and his pill supply) but unknowing of the Defendant's arrest. The defendant continued to receive texts and calls on his cellular phone, which remained in airplane mode, even at approximately 2:30 a.m.



In summary, law enforcement caught the Defendant in the act. The facts demonstrate law enforcement (admittedly by chance and good police work) interrupted his delivery of a massive shipment of fentanyl pills that he had just transported from the state of Washington. Those facts also demonstrate that the Defendant was not merely a transporter of these pills, but a conspiracy facilitator who was expected to follow through with distribution efforts once he landed in the Twin Cities.

More specifically, administrative records from the state of Washington revealed that the Defendant claimed no earned income between 2020 and 2022. The PSR indicates he has not been employed since 2019. *Id.* at 64. However, travel records show that between at least August 2021 and August 2022 he made at least 24 trips to or from various primary source cities, including Los Angeles, Phoenix, and Washington D.C. While he often paid

his own fare, many of his tickets were purchased by others, and shortly before his departure. This included several persons indexed in other drug investigations, including large-scale investigations in Seattle and Washington, D.C. Again, the Defendant was no mere transporter. And this was no first-time affair. Instead, he was entrusted with a significant quantity of fentanyl because he was relied upon by others to accomplish distributions such as the one interrupted on August 31, 2022.

As previously argued in its April 7, 2023, pre-plea sentencing position pleading, ECF 48, the government must again stress the defendant's knowing and willful intention to distribute tens of thousands of potentially fatal doses of fentanyl pills into our community. In a realm where "one pill can kill," his relative culpability for the harm he created is truly significant. Thus the nature and circumstances of this particular offense conduct are noteworthy. Combined with his several interactions with the criminal justice system, a significant sentence is warranted.

## Defendant's Criminal History

The government agrees with the PSR's recommended criminal history categorization. PSR ¶¶ 29-40. While this is his first felony offense, he faces sentencing for his *eighth* criminal conviction, and his criminal history began at age 20 in 2006. Moreover, he has an extensive history of domestic abuse crimes, failure to comply with court conditions, and failure to comply with court orders. He continues to have an active warrant for 2019 offense conduct in Seattle, Washington – a warrant that issued in February 2021 after he failed to appear for court, and therefore was assumedly active when he traveled to Minnesota in August 2022 with 100,000 fentanyl pills.

Defendant's criminal history well-demonstrates the need for a significant term of imprisonment. He is responsible for participating in a conspiracy that was dealing in a significant quantity of fentanyl pills, and he chose to be a part of this after amalgamating a series of other convictions; all despite multiple prior judicial and penal interventions.  He made this choice after failing to take advantage of several opportunities beforehand; in fact, in spite of them.  Instead, it is evident that the Defendant (at least us up to now) has had little if any regard for court terms of supervision, and his most recent conduct – an increased gravamen of harm to more than just one person – well-demonstrates that he has been unmoved by shorter jail terms.

The Defendant is an ongoing criminal offender who's conduct in August 2022 escalated into controlled substance distribution.  The government also echoes the information it shared in its original sentencing position pleading regarding the general community harm that fentanyl has become.  *See* ECF 48 at 8.  The advisory Guidelines range recommended in the PSR is fair, and a substantial sanction is entirely appropriate here.[1]

---

[1] Without safety valve eligible, the applicable advisory Guidelines range will be 121-151 months imprisonment.  Once again, the government's position is that given the circumstances of this case and the Defendant's particular acts, a term of 121 months is the appropriate disposition here, irrespective of whether the Court determines the Defendant qualifies for safety valve.

## Defendant's Characteristics

The PSR provides detailed information regarding the Defendant's characteristics. PSR ¶¶ 42-69.  The government anticipates the defendant will address his characteristics with particularity in his own pleadings.  The Defendant is a 38-year-old man who grew up primarily with his grandparents.  Most significantly, he has abused controlled substances and they have had a clear impact on his decision-making over the years.  But in turn the Defendant more than most knew and fully-understood the harm he was about the help cause many families as he facilitated distributing a gross amount of fentanyl pills onto Twin Cities streets.  He chose that path nonetheless.

## Recommendation

With this background, the government respectfully requests a disposition of 121 months imprisonment, because the circumstances of Defendant's offense combined with the remainder § 3553(a) considerations deserve such a term. The government also asks the Court to render its final determination in light of all of the factors set forth in 18 U.S.C. § 3553(a) relevant here, including those presented at sentencing and any additional submissions by the parties.

Dated: May 11, 2024                     Respectfully,

ANDREW M. LUGER
United States Attorney

*s/ Allen Slaughter*
BY:  ALLEN A. SLAUGHTER JR.
Assistant U.S. Attorney
Attorney ID Number 301668

9